Good morning. May it please the Court. My name is Howard Davis. I represent the Petitioner, Mr. Nagi. I'd like to reserve about two minutes for rebuttal. If you want to do so, just watch the clock. Thank you. There are a couple of issues here that I would like to respond to that were raised by the judge properly denied the continuance. First of all, contrary to the government's statement in the brief, that the expert witness, Dr. Napti, was not absent merely because of a busy academic schedule, but he was unavailable at the last minute because of a matter in which he was required to appear or at least be on hold for that was requested of him by the government in a matter arising out of a grand jury arising out of September 11th. So this was a very last-minute thing that, and in fact, Mr. Nagi's counsel didn't even know about this until the morning of the hearing itself, so he could not have given much advance notice to the immigration court as to the absence. And throughout the, and in different parts of the hearing, the Petitioner's counsel did ask for the court to continue the matter and even suggested, and was even willing to go along, to proceed with the hearing to at least have his client be heard, and then on another occasion, the court would reset the matter for at least the expert to be heard. And he asked this at the beginning of the hearing, around 101 of the administrative record, and then at the very end or after Mr. Nagi's testimony, when he was going to bring on another witness, the judge still insisted on not continuing, even with the understanding that Dr. Napti was involved in a grand jury. Scalia. Counsel, didn't the IJ grant quite a number of continuances in this case? But there were, well, first of all, this was a visiting judge, but this case had been on for a while, but this was something that came at the last minute. This is not, was not just a matter of, well, Your Honor, we need another continuance for something, but this was something that happened at the very last minute on the morning of the hearing itself, something that could not have even been planned for. How did that prejudice, in connection with his main problem, his credibility? Well, even if, just for a moment, even if the Court should find that there was substantial evidence in the record supporting on the main problem, on the credibility issue, there were two things that came up that were not a part. The main credibility issue had to do with events that, discrepancies between his. That's three different, wildly different stories. Well, okay, but, right. Even putting, those, the discrepancies had to do primarily with events that occurred before Mr. Najee left in 92. So in the I-589, as well as at the interview, he didn't talk about the arrests and his involvement in this particular group. However, there was also concern that was not only limited to that, but having to do with events that arose not only after he left, but after the interview. The interview was in 1998. And then there were, there was the issue of the kidnapping of his brother in September of 2001. And even as late as a couple of weeks before the hearing, and that's what his brother-in-law, Mr. Rigabi, was talking about, is that security officers were asking Mr. Rigabi in Yemen about Mr. Najee, and this occurred a couple of weeks before. So that could not have been implicated. So at the very least, in terms of, and even if it's uncertain as to any nexus as it relates to withholding and for asylum purposes, at the very least, for purposes of the torture convention, which requires no nexus, the expert could have been helpful. And there is this. How was he going to be helpful? I didn't quite understand. Well, because the expert, I mean, in the CV, was going to talk about the situation in Yemen, the likelihood of harm to the Petitioner. He was going to talk about the situation as it would relate. How does that help his credibility? Well, it could. What I'm saying is, is that even if the Court, with regard to the – I would say that alternatively, it could help – it's not related to the credibility. The credibility problems have to do with events that occurred before he left in 92 that were not mentioned in the 589, but one could also see problems that arise out of things that happened not only after that, but after the asylum interview itself as late as 2001 and early 2002. So that's not implicated in the credibility problem. So he, at the very least, could have helped with regard to that. And, you know, and the country reports, the support also concerns as well. If one takes a look at the administrative record of 200, 202, it's – this is a country in which security officers routinely detain and have arbitrary detention and mistreat detainees, where torture and human rights abuses go unpunished. And even prison conditions in 202 are poor and don't meet internationally recognized minimum standards. So I think that at the very least, even for purposes of just torture convention, that the expert could have been helpful. And the judge, it seems, was more concerned with – he was a visiting judge. He wasn't going to be coming back. I mean, so – but there were other ways around this. I want to get to another issue here that was raised in the answering brief, and that's a question whether or not the Court has jurisdiction over the CAT. There was a question of whether or not the CAT had been – whether administrative remedies had been properly exhausted. And the brief, government's brief, cites Gisard v. Ashcroft, which I think is unavailing here because in that decision, the board affirmed without opinion and there was absolutely no mention of whatever issue that was raised before the Court. The issue on – I think in any exhaustion case is whether the board was given notice that a certain aspect of the immigration judge's decision was being challenged and that the board had an opportunity to pass on the issue. In this particular case – You raised it in your brief, didn't you? Didn't you raise it in your brief? Well, I talked about – yeah, I did devote a little section in the opening brief on that. But even on appeal, the – if you take a look at the administrative record in 27, the appellant counsel mentions all relief that the immigration judge denied, including CAT, and then asked the board to reverse the judge's decision and then reiterated that in – basically in the prayer on page – on page 39 of the administrative record. So at least under this case that I just handed to the Court, Zhang v. Ashcroft, that there – it was merely – where it says that merely mentioning in the brief that he was requesting the IJ's denial of CAT is sufficient. So I think that it would appear for that. Counsel, you're down to a minute and a half. You indicated you wanted to reserve. Okay. I'll reserve another issue, but I'll – I've got to reserve.  Thank you. You may do so. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Melissa Nyman-Kelting, and I represent the Attorney General. Now, Petitioner has proffered that there are two issues for the Court's review in this case, focusing mostly on the expert witness and the IJ's denial of the continuance in that regard and the jurisdiction over the CAT claim. And the government's position is that Petitioner has failed to demonstrate that the record compels the conclusion that he is either credible or eligible for any of the forms of relief he has requested. He had three opportunities to present his claim to the agency, and with each opportunity he offered a markedly different account of what had happened to him. This simple fact alone undermines his claim that he's eligible for relief. Moreover, he has not demonstrated that the Board abused its discretion in finding that his challenge to the immigration judge's denial of the continuance was without merit. Accordingly, because Petitioner has failed to meet his burden of proof, the Court should deny his petition for review. In addressing the expert witness first, the panel is correct that Petitioner has not shown what prejudice he has suffered in this case as far as the IJ's denial of the continuance in refusing to continue the case yet a fifth time to allow this expert to appear. Petitioner offers the fact that, well, he didn't find out until the day before or prior counsel didn't find out until the day before the hearing that this expert was unavailable. However, if he was being called for grand jury testimony, presumably he would have had prior knowledge of that fact and the counsel could have worked with him to let the Court know in a timely fashion that there was a possibility that this individual would not be able to appear. Notwithstanding that fact, as Your Honors have noted, there's no evidence in the record showing what the expert would have testified to that would have either established the credibility claim, which I think is beyond, you can't confine that he was anything other than incredible with his three different claims before the agency. Moreover, despite his contention that it would have somehow bolstered his cat claim, the record does not compel a finding, and the Board did address his cat claim, despite the fact that the government's position is still that he did not properly exhaust it before. Yeah, but he mentioned it. He mentioned it. He mentioned it. And the Board obviously made a finding about it, so whether or not we have a finding from the Board saying that the record doesn't compel a finding, that it's more likely than not that this individual would be tortured if he's returned to Yemen. No. That's on the merits. Okay. Anything further? If there are no further questions from the panel. No questions. Thank you, counsel. Mr. Davis, you have some reserve time. Number one, with regard to when Petitioner's counsel found out, I mean, this is clearly not his fault. This was something that was completely beyond his control. With regards to salvaging credibility, and, again, I think while the government's theme is that to what extent could the, the, you know, the government's the expert could salvage the credibility of the Petitioner, I, and my, my argument is, is that one doesn't need to use necessarily the expert to salvage the credibility for the reason I talked about earlier. The other thing is, is that, again, in terms of to what extent the, the expert would be able to know about the specifics of Mr. Najeeb's case, of course, that would have been found out during voir dire had that happened. Just one other thing, and I know I have very short time that I want to bring up, is one of the things is that in, in looking at the briefs, the question is, what is it that the Court was reviewing? It seems to me that the Court was reviewing just the BIA's decision. This is not one of these affirmants without opinion, nor is it a, a strict affirmance, because the, the board member went ahead and wrote his own detailed decision. And I, and. I think we understand your point on that, counsel. Thank you very much. Thank you. All right. Your time has expired. The case just argued will be submitted for decision, and we will hear argument in Tiglesi versus Gonzalez.
judges: Goodwin, Hug, O'Scannlain